UNITED STATES of America,
Plaintiff-Appellee,

v.

Earl L. KRAMER, Defendant-
Appellant.

No. 73–1925.

United States Court of Appeals,
Tenth Circuit.

Aug. 20, 1974.

James W. Heyer, Lakewood, Colo., for defendant-appellant.

John W. Madden, III, Sp. Asst. U. S. Atty. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Before HILL, HOLLOWAY and MOORE,* Circuit Judges.

HILL, Circuit Judge.

Earl Kramer was convicted by a jury in the United States District Court for the District of Colorado, of aiding, abetting, inducing and procuring the making of a false financial statement submitted to a federally insured bank to influence the action of the bank in granting a

---

* Honorable Leonard P. Moore, Second Circuit, sitting by designation.

loan, in violation of 18 U.S.C. §§ 1014 [1] and 2.[2] On appeal, we reverse.

The pertinent facts may be summarized as follows.[3] Kramer was president of, and a majority stockholder in, the First National Bank of Fleming, Colorado (bank).[4] In February, 1971, the Regional Administrator of National Banks discussed with Kramer the possibility of increasing the bank's capital structure. Application for such an increase was subsequently made and tentative approval was given. The application lapsed, however, and while it was being renewed Kramer began soliciting bank stock purchasers.

One such prospective investor was Robert Fuller, one of the bank's customers. Fuller operated a tax/accounting business and hay hauling service in nearby Sterling, Colorado. Kramer thought it would be beneficial to the bank if Fuller was a stockholder, as Fuller would then be in a position to refer his 800 clients to the bank for business.

Kramer visited Fuller's office on August 23, 1971, and asked if Fuller, or his clients, would be interested in purchasing bank stock. Fuller replied that he would like to, but that he lacked the necessary finances. It was decided that Fuller would borrow the money from the bank, and he filled out the necessary papers for a $10,000 unsecured loan. Although he had a current financial statement on file with the bank,[5] he made another one which listed his total assets as being $62,300 and his net worth as being $48,100.

Kramer returned to the bank and gave the loan papers and financial statement to an employee to complete and process. At Kramer's direction the loan proceeds were placed in the bank's stock escrow account, pending final approval of the increase in capitalization. The bank's board of directors met on August 26, 1971, and discussed several loans. One of the directors asked Kramer if Fuller's financial statement warranted his loan. Kramer said that it did, and the loan was formally approved.

The bank's increase in capitalization was approved on December 17, 1971. Funds in the bank's stock escrow account were then transferred to its capital account and stock was issued. Fuller received a stock certificate for 333 shares of the bank's stock.

■ Kramer was indicted on July 12, 1973, and convicted on August 22 of that year, receiving a fifteen month prison sentence. He now contends, inter alia, that the evidence introduced at trial was insufficient to sustain his conviction under 18 U.S.C. §§ 1014 and 2. In deciding this issue we must view the evidence presented in the light most favorable to the government to ascertain if there is sufficient substantial proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, from which a jury might find a defendant guilty beyond a reasonable doubt. United States v. Twilligear, 460 F.2d 79 (10th Cir. 1972).

1. 18 U.S.C. § 1014 provides, in part: "Whoever knowingly makes any false statement . . . for the purpose of influencing in any way the action of . . . any bank the deposits of which are insured by the Federal Deposit Insurance Corporation . . . upon any application . . . or loan . . . shall be fined not more than $5,000 or imprisoned not more than two years, or both."

2. 18 U.S.C. § 2 provides, in part: "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

3. We do not recount all the facts. Kramer was also charged with making a false entry and willful misapplication of loan proceeds, in violation of 18 U.S.C. §§ 2, 656 and 1005. These charges were dismissed at the conclusion of the government's case, on motion by Kramer, and facts relating to these charges are irrelevant to this appeal.

4. The bank's deposits were insured by the Federal Deposit Insurance Corporation.

5. Fuller had filed four previous financial statements with the bank, one of which was dated December 10, 1970. It listed his total assets as $6,033.23 and his net worth as $1,797.23.

The government has the burden of proving, beyond a reasonable doubt, that (1) Kramer made, abetted, aided, induced or procured another person in making a false statement submitted to a bank; (2) that he did so for the purpose of influencing the bank's action in approving a loan; (3) that the statement was false as to a material fact; (4) that Kramer did so knowingly; and (5) that the bank's deposits were insured by the Federal Deposit Insurance Corporation (FDIC). *See* 18 U.S.C. §§ 1014 and 2; United States v. Goberman, 329 F.Supp. 903 (M.D.Pa. 1971), aff'd, 458 F.2d 226 (3rd Cir. 1972).

It is conceded that the bank's deposits are FDIC insured. Nor is there any serious dispute concerning the falsity of the August 23, 1971, financial statement which listed Fuller's total assets as $63,300 and his net worth as $48,100. The government's evidence established that Fuller had been in very poor financial shape from 1968 to 1971, that he had defaulted on a $20,000 loan from the Small Business Administration (SBA), and that there were three unsatisfied or partially unsatisfied judgments against him. Neither the SBA loan nor the judgments were disclosed as liabilities on the financial statement in question. Moreover, a financial statement Fuller filed with the bank on December 10, 1970, indicated his net worth was less than $2,000 and a financial statement filed with the SBA in 1972 showed he had a minus net worth.

Nevertheless, our review of the record convinces us that the government failed to prove the remaining elements of the offense. There is no evidence in the record that Kramer made, aided, abetted, induced or procured the making of the financial statement. Fuller, a key government witness and the only person other than Kramer who could testify as to the circumstances surrounding the statement's completion, could recall nothing. Kramer, however, testified that Fuller filled out the statement himself,

that Fuller did not ask what to put in the statement, and that he did not tell him. His testimony was uncontroverted.

Nor do we believe the government introduced sufficient evidence to prove Kramer knew the financial statement was false. Fuller filed five financial statements with the bank from 1968 through 1971, including the one in question. But not one of these statements revealed his SBA loan or the judgments against him. Fuller did testify that he had previously mentioned the SBA loan to Kramer, but could not recall what he said about it. Kramer's uncontradicted testimony was that Fuller said he was in the process of settling an $1800 SBA obligation. Fuller could not recall the conversation that took place between him and Kramer on the date the financial statement was made. However, Kramer stated that Fuller led him to believe his financial affairs were in good order. He stated that Fuller told him his business was expanding and that his yearly income was $30,000. These uncontroverted statements would lead one to believe the financial statement was accurate.

Finally, sufficient evidence does not exist by which a jury could find that the financial statement was submitted to the bank for the purpose of influencing approval of the loan. A financial statement was not necessary, as a current one already was on file with the bank. And, Kramer, as the bank's president, had unrestricted authority to make loans up to the bank's maximum lending limit. Under these circumstances a false financial statement could serve no useful or influential purpose. Kramer and the person approving the loan would be one and the same.

The government, however, argues that the statement served to influence the bank's board of directors. We cannot agree. The evidence discloses that the board members did not review, and were not directly authorized to review, the financial statement. They approved the Fuller loan based on their faith in Kra-

mer and his assertions about the loan. More important, however, is the fact that the loan was made and its proceeds placed in the bank's stock escrow account on August 23, 1971. It already had been obtained by the time the board of directors could vote on it. Their subsequent approval of the loan appears to have been little more than a mere formality.

Our decision that the evidence was insufficient to sustain a conviction renders consideration of Kramer's remaining issues unnecessary.

The judgment of conviction appealed from is reversed and the case is remanded with directions to dismiss the indictment.