**UNITED STATES of America, Appellee,**

v.

**Richard Emerson BONNETTE, Jr., Appellant.**

**No. 80–5075.**

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1981.

Decided Oct. 22, 1981.

Certiorari Denied Feb. 22, 1982. See 102 S.Ct. 1456.

W. Rhett Eleazer, Columbia, S. C., for appellant.

Eric Wm. Ruschky, Asst. U. S. Atty., Columbia, S. C. (Thomas E. Lydon, Jr., U. S. Atty., Columbia, S. C., on brief), for appellee.

Before BUTZNER and MURNAGHAN, Circuit Judges, and RAMSEY *, District Judge.

RAMSEY, District Judge.

Richard Emerson Bonnette, Jr., the appellant, was tried in the United States District Court for the District of South Carolina, and was found guilty by a jury on all counts of a fifteen count indictment which charged Bonnette with bank fraud, in violation of 18 U.S.C. § 1014, and mail fraud, in violation of 18 U.S.C. § 1341. Eugene Jones, who was also indicted with Bonnette, had previously pleaded guilty to count 1. Bonnette was sentenced on counts 1 through 4 to four consecutive one-year terms. Imposition of sentence on counts 5 through 15 was suspended and Bonnette was placed on a five-year term of probation. In this appeal Bonnette challenges the sufficiency of the evidence on which he was convicted of violating the bank fraud and mail fraud statutes.

The facts leading up to the events on which the charges against Bonnette were based are as follows: On March 24, 1974, Capital City Auto Auction (Capital City) was incorporated by Eugene Jones and two other individuals. Bonnette, who is an attorney, handled the details of the incorporation. Capital City would auction used cars and would charge the seller $10.00 for each car entered for auction. An additional fee would be charged if the car was sold at that auction. If the buyer was a dealer, he was permitted to pay for the car by "sight draft" rather than by check or cash. Capital City would accept the dealer's draft, plus an additional "handling-fee," and would write the dealer a check drawn on

---

* Honorable Norman P. Ramsey, United States District Judge for the District of Maryland, sitting by designation.

Capital City's account at the Lexington State Bank in Lexington, South Carolina, for the net amount of the draft. The title to the car sold would be attached to the draft and deposited in Capital City's account. Lexington State Bank would then give Capital City immediate credit on the drafts deposited.

In May 1978, Bonnette visited the Citizens & Southern Bank in Lexington. He complained to Citizens & Southern about Lexington State Bank's handling of the Capital City account. Bonnette then opened an account under the name "Draft Acceptance Corporation" for the purpose of depositing the sight drafts from the dealer-purchasers. The bank agreed to extend credit immediately on deposit of the drafts, instead of waiting until the funds were collected. As it later transpired, drafts were deposited in the Draft Acceptance Corporation account which were covered by titles to cars which were supposedly sold to Hornsby's Used Cars and Capital City Chevron and Auto Sales. In actuality, both of these "dealerships," which were located in Columbia, South Carolina, were run by employees of Capital City and were established for the express purpose of having a purchaser to whom Capital City could attribute a fictitious automobile sale and draft. Capital City also deposited drafts which were backed by invalid titles to cars which were no longer in their inventory.

On March 29, 1979, the Draft Acceptance Corporation account at Citizens & Southern Bank had uncollected funds in excess of $330,000. The bank informed Bonnette that immediate credit would no longer be given on the drafts deposited in that account. Investigation of the account revealed the irregularities which lead to the indictments of Jones and Bonnette.

**I. CONVICTION UNDER 18 U.S.C. § 1014.**

■ 18 U.S.C. § 1014 makes it a crime to knowingly make any false statement or report or to willfully overvalue any land, property or security for the purpose of influencing in any way the actions of a bank whose deposits are insured by the Federal Deposit Insurance Corporation. The essential elements of the crime, which the government must prove beyond a reasonable doubt, are: (1) that defendant made a false statement to a bank; (2) that he did so for the purpose of influencing the bank's action; (3) that the statement was false as to a material fact; and, (4) that the defendant made the false statement knowingly. *United States v. Kramer*, 500 F.2d 1185 (10th Cir. 1974); *see also United States v. Carr*, 582 F.2d 242 (2d Cir. 1978); *United States v. Simmons*, 503 F.2d 831 (5th Cir. 1974).

Appellant contends that he had no knowledge of the overvaluations and falsifications of the drafts. There was ample evidence, however, from which the jury could conclude that Bonnette did know that the drafts were false or overvalued. Linda Knight, an employee of Capital City, testified that Bonnette told her to take titles to cars in Capital City's inventory, staple them to drafts from Hornsby's Used Cars and to make up a price that would represent the purchase price "paid" by Hornsby's for the car. Knight also testified that it was Bonnette's idea to open the two out-of-town accounts in the names of Capital City employees and that Bonnette used to make jokes about the fictitious titles and inflated purchase prices.

Evidence of Bonnette's knowledge can also be found in the testimony of Eugene Jones. Jones testified that the idea to attach the invalid titles to the drafts was Bonnette's and that Bonnette helped him make up the Hornsby's drafts covered by titles from Capital City's inventory. Jones also detailed Bonnette's extensive involvement in the daily operations of Capital City.

Bonnette points out that he was personally liable on all of the drafts deposited in the Draft City Acceptance Corporation account. He claims that his guarantor status is inconsistent with guilt because he would not have transmitted the drafts had he known they were improper. This fact was before the jury. The issue is not whether there is any evidence in Bonnette's favor, however.

The record demonstrates that the evidence on which the jury could determine that Bonnette knew the drafts and titles were false is more than sufficient.

■ Bonnette also claims that his conviction under 18 U.S.C. § 1014 must be reversed because there was no evidence that the bank relied on the propriety of the drafts to achieve payment. Bonnette argues that reliance by the bank is an essential element of the crime. While reliance may be an essential element of a common law fraud action, reliance is not an essential element of bank fraud under § 1014. The crime is one of subjective intent that does not require actual reliance by the bank. *United States v. Kernodle*, 367 F.Supp. 844 (M.D.N.C.1973), *aff'd* 506 F.2d 1398 (4th Cir. 1974); *United States v. Kennedy*, 564 F.2d 1329 (9th Cir. 1977), *cert. denied*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1977); *United States v. Sabatino*, 485 F.2d 540 (2d Cir. 1973), *cert. denied*, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1973).

■ We hold that the requisite elements of bank fraud were proved sufficiently at trial. Appellant's conviction under 18 U.S.C. § 1014 is therefore affirmed.

II. *18 U.S.C. § 1341*

■ The elements of the offense of mail fraud under 18 U.S.C. § 1341 are: (1) the existence of a scheme to defraud; and (2) causing the mails to be used in furtherance of that scheme. *United States v. Mandel*, 591 F.2d 1347 (4th Cir. 1979), *cert. denied*, 455 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1979); *United States v. Grow*, 394 F.2d 182 (4th Cir. 1968), *cert. denied*, 393 U.S. 840, 89 S.Ct. 118, 21 L.Ed.2d 111 (1968).

Bonnette contends that there was insufficient evidence of the first element of the crime, the existence of a scheme, because he did not know the drafts were false. As stated previously, there was ample evidence from which the jury could conclude that Bonnette knew the drafts were false. The sole issue remaining, therefore, is Bonnette's argument that there was insufficient evidence from which the jury could conclude that he knowingly caused the use of the mails to further that scheme.

■ The test as to whether a defendant "causes" a mailing within the meaning of the mail fraud statute is as follows:

Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he "causes" the mails to be used. *United States v. Grow*, 394 F.2d 182, 206 (4th Cir. 1968), (quoting *Pereira v. United States*, 347 U.S. 1, 8–9 [74 S.Ct. 358, 362–63, 98 L.Ed. 435] (1954).

■ There was evidence that the mails were actually used in furtherance of the scheme. Christy Brasington, a teller at Citizens & Southern Bank, testified that after the drafts were deposited, they were mailed to the drawee bank for collection. There was evidence indicating that Bonnette instructed Capital City employees to open accounts for Hornsby's Used Cars and Capital City Chevron and Auto Sales. Both of these accounts were located in Columbia, South Carolina, approximately eleven miles from the Citizens & Southern Bank in Lexington. It was, therefore, reasonably foreseeable to Bonnette that the mails would be used in the ordinary course of business when Citizens & Southern Bank sent the drafts from Hornsby's and Capital City Chevron to Columbia for collection. Appellant's conviction under 18 U.S.C. § 1341 is affirmed.

*AFFIRMED.*