829 F.2d 39
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carl Patrick PLUMERI, Defendant-Appellant.
 No. 86-5959
 United States Court of Appeals, Sixth Circuit.
 September 9, 1987.
 
 Before KEITH, CORNELIA G. KENNEDY and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plumeri appeals his jury conviction for aiding and abetting the making of false statements to an insured bank for the purpose of obtaining credit in violation of 18 U.S.C. Sec. 1014. Plumeri contends that the statements were not material as required by the statute, and therefore the evidence is not sufficient to sustain his conviction. Further, he argues that the district court erred in instructing the jury and failing to grant his motion in limine to suppress certain prejudicial testimony. For the reasons that follow, we affirm.
 
 
 2
 In 1983, Plumeri started a business called Blue Ribbon Foods which was capitalized by a loan secured by a real estate mortgage. Plumeri operated the business and secured a line of credit from First National Bank. Despite this financing, Blue Ribbon Foods had severe cash flow problems. In 1984, Plumeri forged his uncle's signature on a guaranty note for $135,000. At other times, he falsified invoices in an attempt to defraud the bank.
 
 
 3
 The line of credit with First National Bank was secured in part by Blue Ribbon's accounts receivable. When the bank did not receive its percentage of these accounts, the note was declared due. In an effort to further extend financing, a meeting was held with bank representative Tom Larimore on May 30, 1984.
 
 
 4
 Plumeri, Brenda Spero and Alan Levy attended the meeting. At trial, Plumeri testified that Spero was present because she was attempting to purchase the business. Plumeri met Spero through Levy, with whom he was three times previously convicted on charges similar to those contained in the current indictment. Levy was present at the bank meeting as Spero's 'financial advisor.'
 
 
 5
 Before the meeting began, Tom Larimore insisted that all present disclose their identities. Because Levy was afraid that the bank would not extend the desired financing if it knew his identity, he falsely gave his name as 'Sam Allen'. Although Plumeri knew that 'Sam Allen' was an alias, he did not reveal Levy's true identity.
 
 
 6
 During the meeting, Levy falsely informed Larimore that Blue Ribbon Foods was showing a profit and was being 'turned around.' At trial, he testified:
 
 
 7
 'I said to the bank that this company could be turned around, that this company was being turned around, that the financial statements that they--if they would wait, they would see the financial statements being drawn up that the company was being turned around and that we were getting the, you know, cutting our losses and making a very small profit for the period that we had taken it over.'
 
 
 8
 In fact, the business was failing and had made no profit. Plumeri, who also knew that Blue Ribbon Foods was failing and could not recover, said nothing.
 
 
 9
 The indictment charged Plumeri with 18 counts of wire fraud in violation of 18 U.S.C. Sec. 1343 and aiding and abetting the making of false statements to secure a loan. 18 U.S.C. Sec. 1014. Spero and Levy pled guilty to related charges laid against them. After a trial by jury, Plumeri was acquitted of the Sec. 1343 offenses and convicted of violating Sec. 1014.
 
 
 10
 The government's theory was that Plumeri aided and abetted Levy's admittedly false statements concerning the financial condition of the business, and concealment of his true identity, for the purpose of influencing First National Bank to further extend its financing of Blue Ribbon Foods. By saying nothing, Plumeri permitted the bank to be misled into believing that Blue Ribbon Food could recover.
 
 
 11
 Plumeri contends that Levy's statements to bank representative Larimore at the May meeting were not material to the bank's decision to extent the line of credit. See United States v. Bonnette, 663 F.2d 495, 497 (4th Cir. 1981), cert. denied, 455 U.S. 951 (1982). 'A statement concerns a material fact when it has the 'capacity to influence' the lending institution.' United States v. Braverman, 522 F.2d 218, 223 (7th Cir.), cert. denied, 423 U.S. 985 (1975). Because Larimore testified that Levy's identity may have made no difference to the bank as it was already committed to $1,000,000, Plumeri argues that that falsity had no capacity to influence.
 
 
 12
 However, Larimore's testimony does not detract from the material falsity of Levy's statements that Blue Ribbon Foods was showing a profit and turning around. We think it obvious that the nature of these statements had the 'capacity to influence' the bank's decision to further extend financing and increase Blue Ribbon Foods' line of credit. At trial, Levy admitted that the statements were made for just that purpose and were false. We are persuaded that the evidence supports Plumeri's conviction as an aider and abettor in the making of these false statements.
 
 
 13
 Plumeri next contends that the district court erred when it instructed the jury that 'willful blindness' could satisfy the element of knowledge of the falsity of Levy's statements under the statute. This instruction has been long approved in this circuit. See United States v. Thomas, 484 F.2d 909, 912-913 (6th Cir.), cert. denied 414 U.S. 912 (1973), 415 U.S. 924 (1974). We find no error in the court's instruction.
 
 
 14
 Similarly, we find no error in the court's instructions to the jury limiting the use of 'other crimes' evidence to its proper purpose. See E. Devitt & C. Blackmar, Federal Jury Practice and Instructions, Sec. 14.14 (1977). The failure to give the instruction complained of can amount to reversible error, see United States v. Levy, 731 F.2d 997, 1004 (2nd Cir. 1984). Moreover, Plumeri did not object to the 'other crimes' evidence when it was introduced.
 
 
 15
 Finally, Plumeri contends that the district court should have granted his motion in limine to suppress testimony that he had forged his uncle's signature on a guaranty note to the bank. The district judge did not rule on Plumeri's motion. It is well-established, however, that district courts need not rule on all motions in limine and we conclude that the failure to do so in this case was not an abuse of discretion. New Jersey v. Portash, 440 U.S. 450, 462 n.1 (1979) (Powell, J., concurring). Furthermore, it was Plumeri, not the government, who introduced that evidence at trial.
 
 
 16
 The conviction is AFFIRMED.