**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Sherman Wayne SWEARINGEN, Defendant-Appellant.**

**No. 88-3178**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 2, 1988.

Harrison Slaughter, Jr., Frederic B. O'Neal, Winderweedle, Haines, Ward & Woodman, Orlando, Fla., for defendant-appellant.

R.W. Merkle, U.S. Atty., Paul Moriarty, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before TJOFLAT, FAY and KRAVITCH, Circuit Judges.

PER CURIAM:

Following a bench trial in the district court, Sherman Wayne Swearingen was convicted of one count of conspiracy to commit bank fraud and of thirty-four counts of bank fraud, *see* 18 U.S.C. §§ 371, 1344 (1982 & Supp. IV 1986). Swearingen appeals. His principal claim of error, the only claim worthy of discussion, is that the evidence was insufficient to convict. We affirm.

At the time appellant engaged in the conduct that led to his indictment, he was an automobile dealer, trading under the name Auto Excellent. Appellant's business had serious cash flow problems; often, he did not have enough money in his

checking account at the Landmark Bank of Brevard (the Landmark or Bank) to pay for the cars he purchased for Auto Excellent's inventory. A friend of appellant's, Alton B. Millian, had the same problem at his automobile dealership, Millian Dollar Auto Sales. Millian also maintained his dealership's checking account at the Landmark. In time, the two men got together and devised a scheme to solve their cash flow problems. As described in the several counts of the indictment, the scheme worked in the following manner.

When appellant needed cash to pay for an automobile he was purchasing from another automobile dealer, he would draw a draft on Millian and present it to the Landmark for collection. (The draft represented to the Bank that Millian had purchased a car from appellant and would pay for the car by honoring the draft.) The Bank would give appellant immediate credit for the draft, by increasing the balance in his checking account in the amount of the draft; appellant would then use these new funds to pay for the automobile he was purchasing. Thereafter, in the ordinary course of business, the Landmark would present the draft to Millian for payment, and he would honor it, instructing the bank to debit his checking account. To generate the funds necessary to pay the draft, Millian would present the bank with a draft that he had drawn on appellant (which represented to the Bank that appellant had purchased a car from him and would pay for the car by honoring the draft). The Bank, in turn, would give Millian immediate credit, by increasing the balance in his checking account, and then present the draft to appellant for payment. Appellant would pay the draft with funds in his checking account, which he would have generated by getting immediate credit on another draft he would have drawn on Millian and presented to the Landmark for payment.

The drafts appellant and Millian drew on each other and presented to the Landmark involved fictitious automobile sales. The drafts were in the form of an envelope. On its face, the envelope bore a description and the sales price of the vehicle purportedly sold; inside, the envelope contained the documents necessary to transfer title to the buyer—appellant or Millian. These documents were of course false, in that the parties did not intend them to evidence a genuine transaction.

In rejecting appellant's argument that he, and Millian, were actually selling each other automobile titles (the titles enclosed in the draft envelopes) and thus could not have intended to defraud the Bank, or conspire against it to commit bank fraud, the district court appropriately noted that there was little case law on point. The court therefore looked to cases involving the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343 (1982), and another bank fraud statute, 18 U.S.C. § 1014 (1982), for guidance. We repeat the district court's analysis at length because we believe it to be correct.

Section 1344 states, in pertinent part, as follows:

> (a) Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
>   (1) to defraud a federally chartered or insured financial institution; or
>
>   (2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of a federally chartered or insured financial institution by means of false or fraudulent pretenses, representations, or promises, shall be fined not more than $10,000, or imprisoned not more than five years, or both.

The indictment in this case alleges violations of paragraph (a)(2) and not paragraph (a)(1) of this statute.... the Government [therefore] must prove these elements: (1) a scheme or artifice to obtain the moneys, funds or credits under the custody or control of a federally insured financial institution; (2) the Defendant's participation in the scheme by means of false pretenses, representations, and promises which were material; and (3) that the Defendant acted knowingly. *See United States v. Goldblatt,* 813 F.2d 619, 623 (3rd Cir.1987). The Government has met its burden.

[T]he deposits of the Bank were insured by the FDIC.... The concerted conduct of the Defendant and ... Millian was a scheme or artifice. "Scheme" and "artifice" include any plan or pattern of conduct including false and fraudulent pretenses and representations. *Goldblatt*, 813 F.2d at 624. As is hereafter discussed, the conduct of the Defendant falls within this definition.

The envelope drafts submitted to the Bank ... were false representations, knowingly made with intent to defraud, within the meaning of section 1344[ (a)(2) ].

In *Williams v. United States*, 458 U.S. 279, 284–285 [102 S.Ct. 3088, 3091–3092, 73 L.Ed.2d 767] (1982), the Supreme Court held that a "check" is not in and of itself a "false statement" that sufficient funds exist in the account upon which the check is drawn to cover the check. Accordingly, writing a "bad check" was found not to be a false statement within the meaning of [18 U.S.C. §] 1014. In this case, the Defendant argues that under Florida commercial law the envelope drafts at issue similarly made no false representations and that therefore he cannot be convicted under this indictment.

However, the drafts at issue in this case are distinguishable from the checks involved in *Williams*, and are more closely related to the drafts in *United States v. Bonnette*, 663 F.2d 495, 497 (4th Cir. 1981), *cert. denied*, 455 U.S. 951 [102 S.Ct. 1456, 71 L.Ed.2d 666] (1982). In *Bonnette*, the Defendant had been convicted of violating section 1014 by submitting to a bank, in order to obtain immediate credit, sight drafts to which were attached titles representing false sales. The sales were clearly illegitimate. An employee of the defendant testified that the defendant had told her to take titles from cars in inventory and staple them to drafts, and then to make up a price that would represent the "purchase price" for the car. The cars were supposedly sold to two entities which were created by employees of the defendant expressly for the purpose of faking sales. Also, like this case, some of the sales were of cars no longer in the defendant's inventory.

Based on the *Williams* decision, the defendant in *Bonnette* moved to vacate his convictions, arguing that the submitted drafts were not "false statements." The Fourth Circuit denied relief because on the facts of that case, the drafts represented factual assertions. The court said:

> Although checks may not be characterized as factual assertions and therefore cannot be false statements under section 1014, the sight drafts to which titles had been attached did represent assertions: that a car had been sold for the value indicated on the sight draft and, more basically, that a car in fact existed. The title-attached drafts were deposited in the Draft Acceptance Corporation account when, in reality, there had been no sale or there was no car to sell.

*United States v. Bonnette*, 781 F.2d 357, 365 (4th Cir.1986). *See also United States v. Worthington*, 822 F.2d 315, 318–319 (2nd Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 331 [98 L.Ed.2d 358] (1987) (sustaining conviction for false statement under 18 U.S.C. § 1001 where the defendant drew a check on a fictitious bank, since the check was designedly untrue).

In this case, unlike *Bonnette*, the titles to the vehicles were enclosed in envelopes and not stapled to the drafts. However, this distinction is not material. Th[is] Court has found that the Defendant knew that the Bank believed that the envelopes drafts represented actual, legitimate sales of vehicles, and that he used that perception to deceive the Bank in order to obtain an immediate credit on non-existent sales. Accordingly, through the envelope drafts involved in this case the Defendant made false factual assertions with the specific intent to defraud the Bank. *See United States v. O'Malley*, 707 F.2d 1240, 1247 (11th Cir.1983) ("Fraud, for the purposes of a mail fraud conviction, may be proved through the

defendant's non-action or non-disclosure of material facts intended to create a false and fraudulent representation.").

Defendant's claim that actual sales of title, although not marketable title, were occurring is unavailing. Whether or not titles were sold, Defendant intended to and did deceive the Bank into believing that the drafts represented the commercial sale of vehicles. In fact, the sales were simply "paper" transactions with no purpose other than to obtain interest-free financing from the Bank.

These misrepresentations were material. In this regard, actual reliance by the Bank on the false statements is not determinative. The question is whether the false representations were capable of influencing the Bank's actions. *See United States v. Scott*, 701 F.2d 1340, 1345 (11th Cir.1983), *cert. denied*, 464 U.S. 856 [104 S.Ct. 175, 78 L.Ed.2d 158] (1983) (§ 1014 prosecution). *Accord United States v. Halbert*, 712 F.2d 388, 390 (9th Cir.1983), *cert. denied*, 465 U.S. 1005 [104 S.Ct. 997, 79 L.Ed.2d 230] (1984) (mail fraud); *Bonnette*, 663 F.2d at 498. Clearly, the fact that the drafts did not represent legitimate sales of automobiles, but were instead paper transactions designed to obtain an interest-free loan, would be of importance to a reasonable banking institution in deciding whether or not to extend immediate credit on the drafts, and false representations of sales are therefore capable of influencing such bank. The materiality of the misrepresentations is also demonstrated by the Defendant's attempt to conceal his activities from the Bank. In this regard, the question of materiality depends to some degree on the fraudulent intent of the Defendant:

> A misrepresentation may be material without inducing any actual reliance. What is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose.

*United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir.1981) (citations omitted). The misrepresentations involved in this case were intended to deceive the Bank, in the furtherance of fraud. As the Eleventh Circuit has stated regarding arguments that false statements are not material:

> The Supreme Court commented on this type of argument in an early case construing the statute stating: "It does not lie with one knowingly making false statements with intent to mislead ... to say that the statements were not influential or the information not important." *Kay v. United States*, 303 U.S. 1[, 6] [58 S.Ct. 468, 471, 82 L.Ed.2d 607] (1938).

*Scott*, 701 F.2d at 1345 (section 1014 case).

Finally, the misrepresentations were made knowingly with intent to defraud. The totality of the evidence in this case, including testimony as to the purpose, manner and means of the scheme, compel the conclusion that the Defendant knowingly attempted to deceive the Bank by submitting false envelope drafts which did not represent actual sales. Defendant's testimony that he intended to pay back the Bank is not sufficient in this case to establish good faith. Instead, the evidence is overwhelming that the Defendant acted in bad faith.

(Footnotes omitted.)

The evidence of guilt in this case was compelling. Appellant's convictions are, accordingly,

AFFIRMED.