UNITED STATES of America, Appellee,

v.

Jerry E. WELLS, Appellant,

UNITED STATES of America, Appellee,

v.

Kenneth R. STEELE, Appellant,

UNITED STATES of America,
Appellant/Cross–Appellee,

v.

Jerry E. WELLS, Appellee/Cross–
Appellant,

UNITED STATES of America,
Appellee/Cross–Appellant,

v.

Kenneth R. STEELE, Appellant/Cross–
Appellee.

Nos. 93–3924, 93–3932, and 94–1031.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1994.

Decided Aug. 21, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied Nov. 2, 1995.

James R. Wyrsch, Kansas City, MO, argued (Jacqueline A. Cook, on the brief), for appellants.

Mark C. Thompson, Asst. U.S. Atty., Kansas City, MO, argued (Matt J. Whitworth, on the brief), for appellee.

Before MORRIS S. ARNOLD, Circuit Judge, JOHN R. GIBSON, Senior Circuit

Judge, and MELLOY,* Chief District Judge.

MELLOY, Chief District Judge.

Appellants, Jerry E. Wells and Kenneth R. Steele, were tried on one count of conspiracy to make material false statements and three counts of making material false statements to federally insured financial institutions, in violation of 18 U.S.C. §§ 371 and 1014. The court granted judgment of acquittal as to two counts of making material false statements. The appellants were ultimately convicted of the one count of conspiracy and one count of making a material false statement. The defendants appeal their conviction on Counts I (conspiracy) and II (making false statements). The United States of America cross-appeals, alleging errors by the court at sentencing. We vacate the defendants' convictions and remand to the district court for re-trial.

## I. Background

The charges against the appellants relate to the appellants' roles in obtaining financing for their jointly owned business, Copytech Systems, Inc. Copytech, previously known as Doss Office Systems, Inc., was in the business of leasing and servicing copier equipment. At all times relevant to the charged crimes, Copytech was owned by three business associates, the defendants Wells and Steele, and convicted co-conspirator, Mr. Jim Russell.[1] Defendant Wells was an attorney who provided legal services to Doss Office Systems, Inc. before Wells, Steele and Russell purchased it in May 1986. In 1986, the prior owner of the business approached Wells and Steele[2] with an offer to sell the company. Wells and Steele then invited Russell to purchase a share of Doss Office Systems. In May 1986, Wells and Steele's holding company, W & S Holding Company, Inc. (formed specifically for the purpose of purchasing Doss), purchased a two-thirds share of Doss, and Russell purchased the remaining one-third share. The company's name changed from Doss Office Systems to Copytech in 1987.

When Wells, Steele and Russell purchased Copytech, they inherited a company beset by financial trouble. They assumed, in addition to a serious cash flow problem, responsibility for over $8 million in debt. To remedy the cash shortage, Copytech obtained financing through the assignment of future lease payments from its customers' copier leases. Copytech would sell its rights to receive the future lease payments to a financial institution for cash. The leases were sold for a lump sum payment equal to the present value of the sixty-month lease income streams, discounted to yield the bank a 13%–15% profit.

Count I charged the defendants with conspiring to make material false statements to the banks providing such financing, and Count II alleged one instance of making material false statements to one of the banks. Specifically, the charges relate to sales of Copytech's interest in a particular form of lease/service agreement known as Copier Management Program (CMP) leases.

Under the CMP program, Copytech leased copier equipment and provided service and supplies for the leased equipment for one monthly lease/service fee. The CMP monthly lease payments were structured to cover both the fixed cost of providing the copiers and the variable cost of servicing the copiers ("soft costs"). The sale agreements under which Copytech sold its interest in the CMP leases provided for the assignment of Copytech's interest in the leases' income streams to the participating banks, but not the assignment of Copytech's obligations under the CMP leases. Copytech retained the obligation to pay the "soft costs" as the costs were incurred.

When the three Copytech owners purchased Copytech, the company had two established sources of funding: Boatmen's Bank of Kansas City and First State Bank of

---

* The HONORABLE MICHAEL J. MELLOY, Chief United States District Judge for the Northern District of Iowa, sitting by designation.

1. Before the appellants' trial, Mr. Russell pled guilty, pursuant to a plea agreement, to one count of conspiring with the appellants, and to three counts of making false statements.

2. Defendant Steele had participated in previous business ventures with Mr. Wells.

Joplin. Boatmen's Bank required Copytech to maintain a cash reserve account, equal to 15% of the value of the lease contracts, to cover the "soft" service costs in the event of a customer's default on monthly payments, or in case Copytech went out of business. In the face of overdrafts at First State Bank, however, Copytech moved its portfolio from Boatmen's to First State. By moving its money, it freed the reserve account and was able to apply the $500,000 reserve balance to cover its First State overdrafts.

In late 1986 or early 1987, Norwest Bank offered to purchase CMP contracts from Copytech. Because Norwest was aware of the dual lease/service nature of the CMP contracts and Copytech's service obligation under the contracts, it required Copytech to maintain a cash reserve account similar to the account that Boatmen's Bank had required. Copytech turned down Norwest's offer because it needed more money up front and did not want to tie up cash in a reserve account.

The conspiracy charges allege that the conspiracy began after the Norwest experience. After turning down Norwest's offer to purchase CMP contracts, Copytech's owners agreed to misrepresent their service obligations in order to avoid the requirement of maintaining a reserve account. To that end, Copytech altered the language in the CMP lease contracts. The original CMP contract language stated that the lessor (Copytech) was solely responsible for installation and maintenance of the equipment. The revised CMP contract contained the following language:

> Lessee (customer) will keep the leased equipment in good repair and first-class mechanical condition without cost or liability to the lessor ( [Copytech] )....
> This lease constitutes the entire agreement of the parties with respect to the subject matter thereof; may not be changed or modified except in writing.... This lease may only be modified, extended or renewed by a writing signed by the parties hereto.

Although this language expressly states that Copytech does not have any responsibility to service the copiers, revised CMP contracts were executed in conjunction with CMP service addenda shifting the responsibility for servicing the leased copy equipment back onto Copytech. Copytech would then send the CMP leases to its funding sources without including the CMP addenda. By withholding the service addenda from the financial institutions, Copytech was able to hide the service and maintenance obligation and obtain funding without being required to maintain cash reserves to cover service costs.

At the close of evidence, the court entered judgment of acquittal as to Counts III and IV, each alleging the making of a false statement to Bank IV. The only Counts submitted to the jury were Count I, conspiracy to make false statements, and Count II, making a false statement to O'Bannon Bank.

Count I alleged a conspiracy to make material false statements, in violation of 18 U.S.C. § 1014, by omitting any reference to the hidden service costs of CMP contracts. The defendants argue that the omission of information cannot constitute a false statement, that the information on the contract was not technically "false" because the information supplied was literally true, and that in any case, the omission was not material to the transaction. Count II alleged that the defendants made material false statements to O'Bannon Bank by submitting unconditional personal guaranties bearing the signatures of the defendants' wives, knowing full well that they had forged the signatures of their wives. The defendants admit that they had signed their wives' signatures, but maintain that the signatures do not constitute "false" statements because they had the authority, or at least a good faith belief that they had the authority, to sign their spouses' names to the loan guaranties. They also argue that their spouses' loan guaranties were not material to the transactions.

## II. Trial Errors

■ The appellants raise several issues on appeal. They claim that the evidence produced at trial was insufficient to prove guilt beyond a reasonable doubt on each element of both Counts I and II, that Count I failed to allege a violation of 18 U.S.C. § 1014, and that the court erred in excluding certain

expert evidence introduced by the defense and in failing to give a multiple conspiracy instruction as to Count I. In addition, the appellants argue that the court erred in determining the "materiality" of the charged material false statements as a matter of law rather than submitting the issue to the jury.[3] Based on these claimed errors, the appellants request entry of judgment of acquittal or reversal of the convictions and remand for new trial.

## A. Judicial Determination of Materiality:

The defendants were convicted of conspiring to make false statements and making false statements for the purpose of influencing a federally insured banking institution, in violation of 18 U.S.C. §§ 371 and 1014. The trial court required the government to prove the materiality of the false statements charged under both counts I and II as an element of proving both §§ 371 and 1014. The materiality issue was hotly disputed; however, the trial judge determined that the statements were material as a matter of law and instructed the jury that they were not to deliberate on the issue of materiality. The appellants argue that removing the question of materiality from the jury violated their constitutional right to have a jury decide each element of the charged crimes.[4]

The Fifth Amendment right to due process of the law and the Sixth Amendment right to a jury trial, together, mandate that a jury must determine every element of the crime with which a defendant is charged. *United States v. Gaudin*, —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). Where a criminal statute requires proof of the "materiality" of a false statement as an element of

a crime, a defendant's right to a jury trial is violated when the court removes consideration of that element from the jury and determines materiality as a matter of law. *Id.* at ——, 115 S.Ct. at 2320.

In *Gaudin*, the defendant had been convicted of violating the false statement portion of 18 U.S.C. § 1001, which like § 1014, does not explicitly list materiality as an element of the crime. *Id.* at ——, 115 S.Ct. at 2313. At trial, the district court instructed the jury that the charged false statements were material as a matter of law. On appeal, the Ninth Circuit Court of Appeals reversed the conviction based on Ninth Circuit precedents dictating that materiality be determined by a jury. The Supreme Court granted certiorari to resolve a split among the circuits on the question of whether the "materiality" of false statements is a matter for the judge to decide or an element of the crime to be submitted to a jury.

The Supreme Court held that, "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." *Id.* at ——, 115 S.Ct. at 2320. Because it was uncontested that a conviction under the false statement prong of § 1001 required proof that the statements be "material", the court affirmed the Ninth Circuit decision reversing the conviction on the basis of the trial court's improperly removing consideration of materiality from the jury. *Id.*

In the instant case, the appellants argue that "materiality" is an essential element of proving a violation of 18 U.S.C. § 1014 and that judicial determination of materiality at trial violated their constitutional right to trial

---

**3.** The appellants raised the issue of failure to submit materiality to the jury during trial and preserved error on this issue. Appellants also raised the issue in their motion for a new trial. We address this issue despite the fact that it was not raised directly in the appellants' brief on appeal. Under past Eighth Circuit law, the element of materiality in a prosecution for violation of a statute like 1014 was clearly a question for the judge. During the pendency of this appeal, however, the issue has been revived in light of the Supreme Court's recent opinion in *United States v. Gaudin*, —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). Because the defendants

did not waive this issue and the appellees acknowledge that the issue was raised, at least peripherally on appeal, we address the issue here. We did request and receive supplemental briefs after the *Gaudin* decision on this issue.

**4.** The trial judge was of the opinion that the issue of· materiality should be submitted to the jury. He stated: "... I really think it's a jury issue as to whether the representations were material or not material." Tr. 1737. He went on to state, however, that controlling Eighth Circuit law required him to decide the issue as a matter of law.

by jury. The government counters that since 18 U.S.C. § 1014 does not explicitly include the term materiality in its definition of the crime,[5] materiality is not an element of the crime in the sense that judicial determination of materiality would violate a defendant's constitutional right to have a jury decide each element of a charged crime. Since all of the parties acknowledge that the court removed the question of materiality from the jury, we must resolve the issue of whether materiality is an element of proving a charge of making a false statement in violation of 18 U.S.C. § 1014.

With respect to similar fraud statutes, which like § 1014 do not explicitly list materiality in the definition of the crime, this court has held that materiality is an element of proof. *See United States v. Adler*, 623 F.2d 1287 (8th Cir.1980). In *Adler*, the defendant had been convicted on fourteen counts of willfully and knowingly making false statements on claims submitted under the Medicaid and Medicare programs in violation of 18 U.S.C. § 1001 and four counts of willfully and knowingly making false claims under the same programs in violation of 18 U.S.C. § 287. Although neither statute lists materiality as an element of the crime,[6] this court held that materiality is an essential element of both statutes. *Adler*, 623 F.2d at 1291 n. 5.

With respect to the § 1001 charge in *Adler*, this court stated, "[a]lthough 28 [sic] U.S.C. § 1001 on its face does not limit its coverage to those false statements which are material, it has been well established that materiality of the statement is an element of

a violation of 18 U.S.C. § 1001. *United States v. Voorhees*, 593 F.2d 346 (8th Cir.), cert. denied, 441 U.S. 936, 99 S.Ct. 2061, 60 L.Ed.2d 665 (1979)." *Id.* at 1291. In regard to the § 287 charge, the court found that "[n]either appellant nor the government distinguishes between 18 U.S.C. § 1001 and 18 U.S.C. § 287 as far as the requirement of a showing that the false claim or false statement involved is material. Accordingly, we treat materiality as an essential element of both statutes. We see no reason to treat the statutes differently." *Id.* n. 5.

Like 18 U.S.C. § 1001, the statute at issue in *Adler*, the statute at issue in this case, 18 U.S.C. § 1014, on its face does not limit its coverage to those false statements which are material. However, it has been well established that materiality of the statement is an element of a violation of 18 U.S.C. § 1014. *See United States v. Concemi*, 957 F.2d 942, 951 (1st Cir.1992); *United States v. Ryan*, 828 F.2d 1010, 1014 n. 1 (3d Cir.1987); *United States v. Bonnette*, 663 F.2d 495, 496 (4th Cir.1981); *United States v. Thompson*, 811 F.2d 841, 843 (5th Cir.1987); *United States v. Spears*, 49 F.3d 1136 (6th Cir.1995); *Theron v. United States Marshal*, 832 F.2d 492, 496 (9th Cir.1987); *United States v. Smith*, 838 F.2d 436, 439 (10th Cir.1988); *United States v. Rapp*, 871 F.2d 957, 964 (11th Cir.1989). We see no reason to treat § 1014 any differently from the similarly worded §§ 287 and 1001. Therefore, we explicitly adopt the rule we have implicitly acknowledged before, that the "materiality" of a false statement is an element of proving a violation of § 1014. *See United States v.*

---

**5.** 18 U.S.C. § 1014 states that: "[w]hoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any institution the accounts of which are insured by the Federal Deposit Insurance Corporation, ... upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

**6.** 18 U.S.C. § 1001 provides: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any

trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

18 U.S.C. § 287 provides: "Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

*Ribaste,* 905 F.2d 1140 (8th Cir.1990); *see also United States v. Garfinkel,* 29 F.3d 1253, 1256 (8th Cir.1994); *United States v. McKnight,* 771 F.2d 388 (8th Cir.1985); *United States v. Habib,* 594 F.2d 1215, 1216 (8th Cir.1979) (defendants charged with making statements that were materially false under § 1014), *and see also, United States v. Mallen,* 843 F.2d 1096, 1102 (8th Cir.1987); *United States v. Reeves* 674 F.2d 739, 747 (8th Cir.1982); *United States v. Segal,* 649 F.2d 599 (8th Cir.1981) (indictments in § 1014 prosecutions alleged material false statements).

While conceding that most courts require proof of materiality to support a conviction under § 1014, the government argues that courts impose the requirement of proving materiality to exclude trifles from its coverage not as a statutorily required element of the crime. *See United States v. Corsino,* 812 F.2d 26, 30 (1st Cir.1987); *see also Hughes v. United States,* 899 F.2d 1495 (6th Cir.1990); *United States v. Keefer,* 799 F.2d 1115 (6th Cir.1986); *United States v. Abadi,* 706 F.2d 178 (6th Cir.1983); *United States v. Beer,* 518 F.2d 168, 170 (5th Cir.1975). In *Beer,* for example, the court stated that:

> "[w]hen dealing with a pervasive, all-encompassing statute, however, the courts must be extremely careful to insure that reasonable limits are observed. This is merely a restatement of the canon of construction that criminal statutes are to be strictly construed. [citations omitted] In order to exclude 'trivial' falsehoods from the purview of the statute, the courts have read a requirement of materiality into its second clause...."

*Beer,* 518 F.2d at 171. The fact that courts resort to canons of statutory construction to determine that statutes like § 1014 require proof of materiality, however, does not alter our conclusion that proof of materiality is a statutorily required element of the crime.

■ The primary objective of statutory construction is to determine legislative intent. *United States v. Jones,* 811 F.2d 444, 447 (8th Cir.1987). While it is the function of the legislature to make the laws, it is the function of the courts to finally and authoritatively interpret what the law says. *Suther-*land *Stat. Const.* § 45.03 (5th Ed). In this case, we construe § 1014 to require proof of the materiality of a false statement.

■ Because the statute requires proof of the materiality of a false statement, materiality is an element of § 1014. *Gaudin,* therefore, dictates that we vacate the defendants' convictions on both counts I and II and remand the case to the district court for retrial. The trial court's determination of materiality as a matter of law denied the defendants' constitutional right to have a jury determine each and every element of a charged crime, including the materiality of a false statement charged under § 1014 and under the § 371 charge of a conspiracy to violate § 1014.

## B. Violation of 18 U.S.C. § 1014—Count I

The appellants argue that Count I does not allege a violation of 18 U.S.C. § 1014 and that the court erred in not granting their motions for judgment of acquittal, arrest of judgment, and new trial. Since we are remanding for a new trial because of *Gaudin,* we need only address the judgment of acquittal and arrest of judgment issues.

■ Count I alleges a conspiracy to make false statements to financial institutions by agreement to avoid telling the banks about Copytech's financial responsibility to service the copiers under the CMP contracts. The appellants claim that withholding information cannot support a conviction under § 1014, only affirmative assertions of facts can. We disagree.

Other courts have broadly interpreted § 1014 to cover various types of acts and misrepresentations as statements. *See, e.g., United States v. Haddock,* 956 F.2d 1534 (10th Cir.1992) (evidence that defendant failed to disclose line of credit sufficient to convict under § 1014); *United States v. Trexler,* 474 F.2d 369, 370–71 (5th Cir.) (in a § 1014 prosecution, the jury could consider what "a defendant does or fails to do", it is not limited to affirmative acts); *United States v. Sackett,* 598 F.2d 739, 740–42 (2d Cir.1979) (in § 1014 prosecution, there was sufficient evidence for the jury to convict for omitting information orally on loan application); *United States v. Trice,* 823 F.2d 80

(5th Cir.1987) (failure to disclose material information needed to avoid deception in connection with loan transactions covered by § 1014 constitutes a false statement or report within the meaning of the statute and thus violates the statute); *United States v. Ryan,* 828 F.2d 1010, 1017 (3d Cir.1987) (fact that a word was not spoken or written does not necessarily mean that a message was not sent and received; under § 1014 a statement included assertive "nonverbal conduct"); *United States v. Concemi,* 957 F.2d 942, 950–51 (1st Cir.1992) (HUD–1 certificates which omit information about second mortgage constitute "statement" for § 1014 purposes).

Likewise, in construing a similar statute, we have recognized that an omission in a § 1005 prosecution can constitute a "false entry" where an honest entry would otherwise be made. See *United States v. Copple,* 827 F.2d 1182, 1187 (8th Cir.1987). The defendant in *Copple* was prosecuted under 18 U.S.C. § 1005 for making false entries in a bank book, report or statement. The defendant argued that the evidence was not sufficient to support a § 1005 charge because there could not have been a false entry made where the false documents were withheld, rather than entered. We held, *citing United States v. Dougherty,* 763 F.2d 970, 973 (8th Cir.1985), that an omission could constitute a false entry, where an honest entry would otherwise be made.

■ In this case, Count I charges that the appellants conspired to violate § 1014 by knowingly omitting material information for the purpose of influencing federally insured financial institutions. As in *Copple,* such omissions may constitute a false statement where honest statements would otherwise be made. The literal truth of information that is actually submitted does not shield the intentional omission of material information from prosecution under § 1014. The allegations contained in Count I of the indictment are sufficient to allege a violation of 18 U.S.C. § 1014.

## C. Sufficiency of Evidence

The defendants argue that the evidence produced at trial, as to both Counts I and II, was legally insufficient to prove guilt beyond a reasonable doubt as to each and every element of both counts. As to Count I, the defendants claim that the evidence does not support a finding that they intended to influence the banks. As to Count II, they argue that the evidence does not support a finding that they did not have the authority to sign their wives signatures. As to both counts, they claim that the evidence does not support a finding that the false statements were "material". Consequently, they claim that the Court violated their Fifth Amendment right to due process by denying their motions for judgment of acquittal, arrest of judgment and new trial. Again, since we are remanding for a new trial on other grounds, we need only address whether the motion for judgment of acquittal or arrest of judgment should have been granted.

■ In reviewing the denial of a motion for judgment of acquittal, the evidence is viewed in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting as established all reasonable inferences which may be logically drawn from the evidence. *United States v. Springer,* 831 F.2d 781, 783–84 (8th Cir.1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 277 (1988); *United States v. Rodriguez,* 812 F.2d 414, 416 (8th Cir.1987). A motion for judgment of acquittal should be granted only where the evidence is such that a reasonably minded jury must have a reasonable doubt as to the existence of one of the essential elements of the crime charged. The court can neither weigh the evidence nor assess the credibility of the witnesses. *Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). Determining the credibility of witnesses is the jury's function.

■ Application of that standard to the record in this case leads us to the conclusion that there was more than sufficient evidence to support each defendant's conviction on each element of both Counts I and II. Mr. Russell, the third co-defendant in this case testified against both Wells and Steele on each count. Since his testimony is not incredible or insubstantial on its face, it is sufficient to sustain a conviction on both

counts. *See United States v. Drews,* 877 F.2d 10, 13 (8th Cir.1989) (The uncorroborated testimony of an accomplice is sufficient to sustain a conviction if the testimony is not incredible or insubstantial on its face.). In addition, the evidence of the timing of the evolution of the CMP contract language supports an inference of intent as to Count I. Evidence that the defendants did not sign their own wives' names to the loan guarantees supports both an inference that they did not have the authority to sign their wives names as they claim and that they intended to submit false signatures and influence the bank.

▮ The defendants argue that neither the withholding of the information alleged in Count I nor their wives' signatures on personal loan guarantees were material because there was some evidence that bank officers would not have relied on the information. Reliance, however, is not necessary to make out a violation of § 1014. *United States v. Copple,* 827 F.2d 1182, 1187 (8th Cir.1987). The crime is one of subjective intent, it is enough that the statement has the capacity of influencing the financial institution. *United States v. Glassey,* 715 F.2d 352 (7th Cir.1983); *United States v. Bonnette,* 663 F.2d 495 (4th Cir.1981). In this case, the evidence that Boatmen's and Norwest required reserve accounts as a precondition to financing the CMP leases is sufficient to support a finding that the withheld information was material, or in other words, had the capacity to influence the financial institutions. The fact that O'Bannon Bank asked the defendants to have their wives sign unconditional loan guarantees supports a reasonable inference that personal loan guarantees from the defendants' spouses would have the capacity of influencing the bank.

**D. Expert Testimony**

▮ The defendants also challenge the court's exclusion of expert testimony on the issues of whether the revised copier lease contracts and their coordinate CMP addenda were, together, part of the same lease and whether the false statements were material. As the expert's proffered testimony amounted to instructing the jury on the law, the court's exclusion of the evidence was not manifestly erroneous. *See, e.g., Specht v. Jensen,* 853 F.2d 805, 807 (10th Cir.1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989); *United States v. DiDomenico,* 985 F.2d 1159, 1164 (2d Cir.1993) (instruction on the law is the function of the court, not a defense expert). We do not reach the question of whether the court's refusal to admit expert evidence on the issue of materiality was erroneous because we are remanding the case for retrial on other grounds. However, we note that the admissibility of expert evidence on the issue of the materiality of false statements should be determined in light of our holding above that materiality is an issue for the jury.

**III. Multiple Conspiracy and Sentencing Errors**

Appellants appeal the trial court's decision to not give a multiple conspiracy instruction. Because we reverse the defendants' convictions and remand for new trial, we do not reach the issue of whether the evidence at a new trial will require a multiple conspiracy instruction. Likewise, we do not decide the sentencing issues raised by the government in its cross-appeal.

**IV. Conclusion**

We hold that proof of the materiality of an alleged false statement is required as an element of proving a violation of 18 U.S.C. § 1014. The trial court in this case denied the appellants' constitutional right to have a jury deliberate on each and every element of proof of the charged crimes by instructing the jury that they were not to deliberate on the materiality of the false statements underlying both Counts I and II because the statements were material as a matter of law. Since the evidence was otherwise sufficient to support a conviction and overcome the defendants' motions for judgment of acquittal, we vacate the convictions and remand to the district court for retrial consistent with this order.