**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

NICHOLAS MARTIN CARDENAS, a/k/a
Jose Gutierrez,
<u>Defendant-Appellant.</u>

No. 97-4605

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CR-96-187-PJM)

Argued: October 29, 1997

Decided: January 13, 1998

Before MURNAGHAN, NIEMEYER, and
HAMILTON, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion,
in which Judge Murnaghan and Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Michael T. CitaraManis, Assistant Federal Public
Defender, Greenbelt, Maryland, for Appellant. Deborah A. Johnston,
Assistant United States Attorney, Greenbelt, Maryland, for Appellee.
**ON BRIEF:** James K. Bredar, Federal Public Defender, Greenbelt,
Maryland, for Appellant. Lynne A. Battaglia, United States Attorney,
Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

NIEMEYER, Circuit Judge:

Nicholas Cardenas pled guilty to one count of mail fraud in violation of 18 U.S.C. § 1341 for using the U.S. mails to present fraudulent claims to insurance companies in connection with an automobile accident on October 4, 1992. In sentencing Cardenas, the district court attributed to him losses not only from that accident but also from three other "accidents" in May 1991, June 1991, and June 1992, totaling $80,785.49. The court sentenced Cardenas to five months imprisonment and five months home detention and ordered him to pay $32,506.70 in restitution.

The only issue on appeal is whether the district court clearly erred in attributing to Cardenas the losses for the other accidents. Cardenas points out that two of the four accidents were real and that he was involved in both. But the other two "accidents" were staged, and he had no direct involvement in them. When the staged accidents are excluded, the offense level changes, reducing his sentencing range from 10-16 months to 6-12 months.

Finding that the district court did not clearly err, we affirm the sentence imposed.

I

The two real accidents for which Cardenas does not deny responsibility occurred on May 31, 1991, and October 4, 1992, respectively. In the May 1991 accident, Cardenas was driving a car, in which his brother Percy Cardenas was a passenger, and collided with another car at Chevy Chase Circle in Montgomery County, Maryland. Both drivers denied responsibility. Following the accident, however, Cardenas' friend, Teodoro Etienne, falsely advised the insurance companies that he had witnessed the accident and that the other driver was

2

at fault. Shortly thereafter, Cardenas and his brother submitted medical bills for injuries they allegedly sustained as a result of the accident. They also submitted claims for lost wages supported by phony federal income tax forms and inflated wage statements signed by Cardenas' employer, Luis Gamboa.

The facts surrounding the October 1992 accident, which was the accident that formed the basis of the count to which Cardenas pled guilty, are similar. Cardenas was driving a car in which his girlfriend, Evelyn Boffa, was a passenger. Their car was struck by another vehicle on Viers Mill Road in Wheaton, Maryland. The other driver admitted he was at fault. While still at the scene, Cardenas contacted the other driver's insurance company and falsely reported that he, Boffa, and one "Jose Gutierrez" had been in the car at the time of the accident. Once again, medical bills were submitted to the insurance companies on behalf of Cardenas, Boffa, and "Gutierrez." Cardenas and "Gutierrez" also submitted phony wage loss claims verified by Gamboa. Since Boffa worked for another employer, her fraudulent wage loss claim was prepared and signed by Etienne. Etienne also signed a lost wage statement purporting to be from Cardenas' soccer club where Cardenas worked as a coach.

The total amount of loss assigned by the district court to these two real accidents was $34,898.30.

The two staged "accidents" for which Cardenas disputes his responsibility took place on June 7, 1991, and June 25, 1992, respectively, and were planned and executed by Percy Cardenas, Etienne, and Gamboa. In the June 1991 accident, Etienne rented a car and then claimed to have rear-ended another car occupied by Percy Cardenas, Gamboa, and "Jose Gutierrez." With Etienne posing as "Gutierrez," the three men received medical treatment and submitted the bills, along with phony wage loss claims verified by Gamboa, to the insurance companies. In the June 1992 accident, Gamboa posed as the "at fault driver" who struck a vehicle occupied by Etienne and one "Luis Sanchez." Percy Cardenas, who claimed to be a passenger in Gamboa's car, served as a witness to the accident. This time, false medical bills and wage loss claims were submitted on behalf of Etienne and "Sanchez."

3

The total amount of loss assigned by the district court to the two staged accidents was $45,887.19.

Cardenas pled guilty pursuant to a plea agreement which he signed. In the plea agreement Cardenas stipulated that the government would prove at trial that

> From January 1991, through July, 1994, Luis Nelson Gamboa, Teodoro Etienne, Richard Percy Cardenas and Nicholas Martin Cardenas were engaged in a scheme to defraud insurance companies by staging motor vehicle accidents, and by filing inflated and false wage loss claims for both actual and staged accidents.

The government and Cardenas, however, "agree[d] to disagree as to the amount of fraud loss," reserving that issue for determination by the court at sentencing.

At sentencing, the district court found that because of the plea agreement stipulation, "there is certainly a concession that there was a conspiracy of some sort afoot." It then concluded that the two staged accidents, in which Cardenas did not directly take part, were foreseeable acts in furtherance of the joint activity. The court stated:

> The other two transactions are somewhat more difficult, because, essentially, what we've got with regard to the transactions are June 7, 1991, and June 25, 1992, are transactions involving the same sort of people who are involved with the defendant on May 31, 1991, and October 4, 1992, weaving in and out of the transactions.
>
> The issue really is whether on merely given the fact that the defendant was aware that there was a scam going on with regard to some people he was involved with would be assignable for that amount of loss.
>
> I am convinced, although I think it's a close question, that the government has prevailed on this point. I think this defendant was aware that there was a conspiracy going on,

4

while he would not have foreseen the specific accidents that would have occurred, he knew that some of the same people, including his brother [and] Teodore Etienne, would be involved, that the Jose Gutierrez would be involved, he can't close his eyes and say I didn't know. It was reasonably foreseeable when he signed on for his two frauds that some of the same players would be involved in other frauds during that transaction. The Court does feel that, given the reasonable foreseeability of the issue, these other activities were part of the jointly undertaken criminal activity.

The court thus attributed the losses from all four incidents to Cardenas, the dollar amount of which is not disputed.

From the district court's factual finding, Cardenas noticed this appeal.

II

On appeal, Cardenas assigns error to the sentencing judge's determination, pursuant to U.S.S.G. § 1B1.3(a)(1), that he was responsible for the two staged accidents. First, Cardenas points out that he had no direct involvement, either as a claimant, witness, or forger, in either of the staged accidents. Second, he argues that the staged accidents could not have been within the scope of his criminal agreement or reasonably foreseeable to him since they were part of a premeditated plan to commit fraud, whereas the false insurance claims he submitted following the two real accidents were "crimes of opportunity." Finally, Cardenas contends that the sentencing judge's factual findings were insufficient to meet the requirements of U.S.S.G. § 1B1.3.

A defendant's sentence for mail fraud is determined pursuant to U.S.S.G. § 2F1.1, providing that a defendant's offense level is a function of the total amount of loss caused by the fraud. This amount "need not be determined with precision. The court need only make a reasonable estimate of the loss," U.S.S.G. § 2F1.1, comment. (n.3), and we review that determination for clear error. United States v. Smith, 29 F.3d 914, 917-18 (4th Cir. 1994).

5

In determining the amount of loss caused by the fraud, U.S.S.G. § 1B1.3(a)(1) directs the district court to consider both the defendant's own wrongful conduct as well as "all reasonably foreseeable acts and omissions of others" committed in furtherance of "a jointly undertaken criminal activity." A jointly undertaken criminal activity is defined as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." U.S.S.G. § 1B1.3(a)(1)(B). Thus, as we explained in United States v. Gilliam, 987 F.2d 1009, 1012-13 (4th Cir. 1993), a defendant may be held responsible at sentencing for crimes committed by third parties where the district court finds that those crimes were "within the scope of the defendant's [criminal] agreement" and were "reasonably foreseeable to the defendant." Such findings will be overturned by this court only if clearly erroneous. See United States v. Banks, 10 F.3d 1044, 1058 (4th Cir. 1993).

In this case, the district court sentenced Cardenas based on both the $34,898.30 in losses stemming from the two real accidents for which Cardenas admits responsibility and the $45,887.19 in losses stemming from the two staged accidents at issue in this appeal. Because the total loss attributed to Cardenas for sentencing purposes under U.S.S.G. § 2F1.1 was $80,785.49, his offense level was 12 which, along with a criminal history category of I, yielded a sentencing range of 10-16 months imprisonment. If Cardenas were not held responsible for the two staged accidents, he would have been sentenced based on a loss of only $34,898.30, which would have led to a sentencing range of 6-12 months imprisonment.

In finding that Cardenas was responsible for the losses stemming from the June 1991 and June 1992 staged accidents, the court relied on Cardenas' stipulation that he participated in a scheme to defraud involving both real and staged accidents. The court noted that the parties to all cases overlapped; that "Jose Gutierrez" was a fictional person used in both the real and staged accidents; and that the staged accidents were sandwiched between the real ones. The court acknowledged that Cardenas may not have known of the specifics of each accident, but it concluded that all were foreseeable as part of the scheme. Thus, as required by U.S.S.G. § 1B1.3 and our decision in Gilliam, supra, the district court found that the two staged accidents were "part of [Cardenas'] jointly undertaken criminal activity" and

6

were "reasonably foreseeable" to Cardenas. We believe that sufficient evidence supports the district court's determination on this issue.

When Cardenas voluntarily decided to plead guilty to one count of mail fraud, 18 U.S.C. § 1341, he stipulated that from January 1991 to July 1994, he, his brother Percy, Gamboa, and Etienne had "engaged in a scheme to defraud insurance companies by staging motor vehicle accidents, and by filing inflated and false wage loss claims for both actual and staged accidents." (Emphasis added.) Further evidence linking Cardenas to the two staged accidents may be found in the temporal proximity between the staged accidents and the real accidents, and also in the numerous similarities among all four accidents in terms of the parties involved and the fraudulent methods employed. In light of this evidence, we cannot say that the district court's decision to hold Cardenas responsible for the losses stemming from the two staged accidents was clearly erroneous.

Cardenas also contends that in sentencing him the district court failed to make adequate factual findings for purposes of U.S.S.G. § 1B1.3. We find this argument to be without merit.

Accordingly, Cardenas' sentence is

AFFIRMED.

7