**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-4575**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LUTHER ALAN WARE,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Durham.  James A. Beaty, Jr., District Judge.  (CR-05-17)

Argued: March 15, 2007          Decided: April 18, 2007

Before TRAXLER, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Charles Henry Harp, II, Lexington, North Carolina, for Appellant.  Lawrence Patrick Auld, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Anna Mills Wagoner, United States Attorney, Douglas Cannon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Luther Alan Ware appeals from his three convictions in the Middle District of North Carolina for unlawful interference with commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951 (Count One); knowingly carrying and using, by discharging, a firearm, during and in relation to the Hobbs Act offense charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Two); and felonious possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Three). With respect to the two Hobbs Act-related charges, Ware contends that the district court erred in denying his pre-trial motion to dismiss Counts One and Two, in denying his motions for judgment of acquittal on Count One, and in rejecting a proposed jury instruction. On all three counts, Ware also asserts (for the first time in this appeal) that the court improperly admitted evidence relating to his earlier felony convictions. As explained below, we reject his contentions and affirm.

I.

A.

On December 3, 2004, a man wearing a ski mask — later identified as Ware — entered Ronnie Stokes's insurance agency on West Broad Avenue in High Point, North Carolina. Ware produced a handgun and ordered Stokes to hang up the phone. Ware then removed

2

cash, money orders, checks, credit card payments, debit card payments, and payment vouchers from the agency's cash drawer, and stuffed them into his pockets. Stokes testified that the drawer contained approximately $3,000 in checks, money orders, and receipts, including between $100 and $195 in cash.

After demanding that Stokes hand over his wallet, Ware ordered Stokes into the bathroom. As Stokes headed toward the bathroom, he heard Ware's gun click. In response, Stokes simultaneously grabbed Ware's jacket and the firearm, which discharged. Fortunately, neither Stokes nor Ware was hit as a result, but a physical struggle ensued, during which Stokes removed Ware's mask, revealing his face. As they wrestled to the floor, the handgun again discharged, but again neither man was hit. During the struggle, Stokes's head was slammed against a concrete wall in the vicinity of the bathroom. Temporarily dazed by the blow, Stokes regained consciousness as Ware was leaving the insurance agency.

Once back on his feet, Stokes ran outside and encountered the owner of a neighboring store, Anthony McQueen, and a passer-by, Diallo Crawford. After briefly explaining the situation to the two men, Stokes pointed to Ware, who was moving on foot toward Main Street in High Point. McQueen promptly called the police, while Crawford followed Ware on foot. Stokes then got into his car and circled the block in an effort to intercept Ware. At the intersection of Main Street and Kivett Drive, Stokes saw Ware and

demanded that he drop everything he had taken from the Stokes agency. In response, Ware first motioned for Stokes to approach, but then again began to run. A chase ensued in which Stokes and Crawford followed Ware around various buildings and parking lots, until Ware stopped behind a Wachovia Bank building. Again, Stokes demanded that Ware release the items he had stolen from the insurance agency. Ware then pulled Stokes's wallet from his pocket and threw it between some parked cars. As Stokes retrieved his wallet, Ware ran down Kivett Drive toward Main Street. Still pursuing Ware, Stokes got back into his automobile and pulled onto Wrenn Street, where he saw an unmarked police vehicle and alerted the officer to where Ware was headed. Ultimately, High Point police officers apprehended Ware on Main Street, where they recovered a semiautomatic handgun from his pocket, plus $103 in cash. Stokes later identified Ware, who was in the police cruiser, as the gunman in the ski mask who had robbed the insurance agency.

B.

On January 31, 2005, the grand jury in the Middle District of North Carolina returned an indictment against Ware, charging him with the three offenses at issue in this appeal. Ware filed a pre-trial motion seeking dismissal of Counts One and Two, maintaining that his alleged conduct did not fall within the ambit of the Hobbs Act. At oral argument conducted on May 4, 2005, the district court denied, from the bench, Ware's motion to dismiss. A two-day jury

4

trial was held on May 10-11, 2005, and, prior to the presentation of evidence, the following stipulations were made by the parties: (1) "that the Defendant is, in fact, a convicted felon unable to possess a firearm,"[1] (2) "that the firearm retrieved in this case traveled in interstate commerce," (3) "that the handgun was test-fired and found to be in working order," and (4) "that the cartridges that were found at the scene were, in fact, fired by the gun that was recovered." J.A. 18.[2] As presented to the jury, the court struck from the stipulations the nature of Ware's relevant prior felony conviction, in order to minimize any possible prejudice.

At trial, Stokes testified about the robbery of his agency and the ensuing chase through the streets of High Point, and McQueen and Crawford corroborated Stokes's testimony. Supporting witnesses from the High Point Police testified for the prosecution. At the close of the prosecution's case-in-chief, Ware moved for judgment of acquittal on Count One, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, asserting that the evidence failed to establish that "this incident interfered, obstructed or delayed the interstate commerce in [Stokes's] business," as required under the

---

[1]The predicate felony conviction for Count Three is Ware's August 1995 conviction in the Superior Court of Guilford County, North Carolina, for the offense of robbery with a dangerous weapon.

[2]Our citations to "J.A. ____" refer to the contents of the Joint Appendix filed by the parties in this appeal.

Hobbs Act.  J.A. 181.[3]  The court denied Ware's Rule 29 motion, however, and he proceeded to present his defense.  Maintaining his innocence, Ware testified on his own behalf, asserting that the gunman who had robbed Stokes's insurance agency was actually a man named John Wesley Zimmerman.

During his direct examination at trial, Ware testified that he had been previously convicted of armed robbery in 1984 and also "went to prison in '95 for armed robbery with a dangerous weapon." J.A. 197.  Ware apparently revealed these convictions in an effort to show the jury his past willingness to accept criminal responsibility when he was guilty.  Specifically, Ware testified that:

> I took a plea bargain then because I knew I had done wrong.  So I asked for a plea and they gave me a plea bargain.  This here I didn't take no plea bargain because I hadn't done nothing wrong.  I didn't rob nobody, so I didn't want no plea.

---

[3]Pursuant to §1951(a) of Title 18, the Hobbs Act provides, in pertinent part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . shall be fined . . . or imprisoned . . . or both.

See 18 U.S.C. § 1951(a).  Although the Hobbs Act refers specifically only to "commerce," it is well-established that it is "interstate commerce" that the Act was drawn to protect. See Stirone v. United States, 361 U.S. 212, 215 (1960) (concluding that Hobbs Act "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence").

J.A. 197. Ware also testified that he had pleaded guilty to the 1984 armed robbery offense "because I knew I had done wrong." Id. On cross-examination, the prosecution elicited additional testimony from Ware that he had been convicted, after pleas of guilty, of several other armed robbery offenses.

After all the evidence had been presented, Ware renewed his Rule 29 motion, which the trial court again denied. Ware then presented his request for jury instructions. In pertinent part, he requested an instruction that a violation of the Hobbs Act does not occur unless the alleged criminal conduct has substantially affected interstate commerce. Concluding that Ware's proposed instruction contravened controlling precedent, the court denied Ware's request "to the extent that it is contrary to Fourth Circuit law." J.A. 244. On May 11, 2005, the jury returned a verdict of guilty on all three counts.

## II.

### A.

On appeal, Ware first challenges his convictions on the Hobbs Act-related offenses in Counts One and Two. A Hobbs Act violation is comprised, in relevant part, of only two elements: (1) a robbery as defined in 18 U.S.C. § 1951(b)(1); and (2) an effect on interstate commerce. See United States v. Williams, 342 F.3d 350, 353 (4th Cir. 2003). Specifically, the Act "does not require proof that a defendant intended to affect commerce or that the effect on

7

commerce was certain; it is enough that such an effect was the natural, probable consequence of the defendant's actions." Id. at 354 (citing United States v. Spagnolo, 546 F.2d 1117, 1118-19 (4th Cir. 1976)). Ware contends that, in this situation, there was an insufficient nexus to interstate commerce for the robbery of Stokes's insurance agency to fall within the ambit of the Hobbs Act. Accordingly, he asserts that the trial court erred in denying his motion to dismiss Counts One and Two, his motions for judgment of acquittal on Count One, and his request for a jury instruction requiring proof that the robbery "substantially" affected interstate commerce.

We review "the district court's factual findings on a motion to dismiss an indictment for clear error, but we review its legal conclusions de novo." United States v. Woolfolk, 399 F.3d 590, 594 (4th Cir. 2005) (citations omitted). Moreover, we review de novo a trial court's denial of a Rule 29 motion for judgment of acquittal. See United States v. Smith, 451 F.3d 209, 216 (4th Cir. 2006); see also United States v. Lentz, 383 F.3d 191, 199 (4th Cir. 2004). A guilty verdict must be sustained if there is substantial evidence, taking the view most favorable to the prosecution, to support a finding of guilt. See United States v. Burgos, 94 F.3d 849, 862-63 (4th Cir. 1996). We have defined substantial evidence as that which "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt

beyond a reasonable doubt." Id. at 862 (citing United States v. Smith, 29 F.3d 914, 917 (4th Cir. 1994)).

When a robbery offense "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce," the Hobbs Act provides a basis for federal prosecution. See 18 U.S.C. § 1951(a). Although Ware maintains that a substantial effect on interstate commerce must be shown for a robbery to be prosecuted under the Hobbs Act, we have consistently recognized otherwise, holding that a "minimal effect" is sufficient. See Williams, 342 F.3d at 354 (concluding that relevant Supreme Court decisions do not disturb our "minimal effects" standard); see also United States v. Spagnolo, 546 F.2d 1117, 1119 (4th Cir. 1976) (determining that Hobbs Act applies when extortion offense has a minimal effect on interstate commerce). Furthermore, the interstate commerce element of a Hobbs Act offense has been shown "where a robbery depletes the assets of a business that is engaged in interstate commerce." Williams, 342 F.3d at 354-55.

In this case, the indictment alleges that Ware committed Hobbs Act-related offenses in Counts One and Two through his interference with commerce by the commission of an armed robbery, in contravention of 18 U.S.C. §§ 1951 and 924(c)(1)(A)(iii). Viewed in the proper light, the evidence established that Ware robbed Stokes's insurance agency in High Point, North Carolina, which sold

9

insurance and bonds for businesses located in South Carolina, New York, Connecticut, Illinois, and England. In so doing, Ware stole money orders, checks, credit card payments, debit card payments, and payment vouchers worth approximately $3,000, including $100 to $195 in cash.[4] As a result, a rational trier of fact could reasonably conclude that the robbery of the Stokes agency had the requisite "minimal" effect on interstate commerce. We thus affirm the district court's denial of Ware's motion to dismiss Counts One and Two and his motions for judgment of acquittal on Count One.

Ware also maintains that the court erred in denying his proposed instruction on the commerce element of the Hobbs Act. Specifically, he requested an instruction requiring that the alleged robbery be shown to have a "substantial effect" on interstate commerce. We review the denial of a proposed jury instruction for abuse of discretion. See United States v. Stotts, 113 F.3d 493, 496 (4th Cir. 1997). Generally, "a criminal defendant is entitled to an instruction as to any defense, provided that the instruction . . . accurately states the law." United States v. Sloley, 19 F.3d 149, 153 (4th Cir. 1994) (citing Mathews v. United States, 485 U.S. 58, 63 (1988)). Consistent with our precedent, however, a minimal effect on interstate commerce is all

_____

[4]Although there is some difference between Stokes's testimony about what was stolen from his agency's accounting drawer and what the officers say they recovered from Ware at his arrest, the jury was entitled to accept Stokes's version of those facts.

that is necessary to establish the commerce element of a Hobbs Act offense.  See Williams, 342 F.3d at 354.  Because Ware's proposed instruction contravened applicable law, we also affirm the court's ruling on this point.

B.

Finally, Ware contends that the district court contravened Rule 609 of the Federal Rules of Evidence by permitting the prosecution to cross-examine him on his prior criminal history. Specifically, Ware argues that his cross-examination was improper because his prior convictions were more than ten years old.  Under Rule 609, "evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from confinement imposed for that conviction, whichever is the later date," unless the court determines that the probative value of the conviction substantially outweighs its prejudicial effect. Fed. R. Evid. 609(b).  Because Ware failed to object to such cross-examination at trial, our review of this contention is for plain error only.  See United States v. Lamarr, 75 F.3d 964, 969 (4th Cir. 1996).  In order to establish that the trial court committed plain error in permitting Ware to be cross-examined on his prior convictions, he is obliged to show that an error occurred, that it was plain, and that it was prejudicial to his substantial rights. See United States v. Olano, 507 U.S. 725, 732 (1993).  We would

11

then correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. at 732 (internal quotation marks omitted).

Before Ware testified, the trial court warned him that, by taking the stand, he exposed himself to cross-examination about his criminal record, including the predicate robbery conviction that was the subject of the trial stipulation. Importantly, on direct examination, Ware himself revealed his 1984 and 1995 armed robbery convictions. First, he acknowledged that he pleaded guilty and went to prison in 1995 for armed robbery with a dangerous weapon, apparently seeking to demonstrate to the jury a pattern of accepting responsibility when he is actually guilty. Specifically, Ware testified that:

> I took a plea bargain then because I knew I had done wrong. So I asked for a plea and they gave me a plea bargain. This here I didn't take no plea bargain because I hadn't done nothing wrong. I didn't rob nobody, so I didn't want no plea.

J.A. 197. Ware's defense counsel then examined him about his other prior convictions, to which he responded that he had also pleaded guilty to armed robbery in 1984 "because I knew I had done wrong." Id. Thereafter, on cross-examination, and without objection, the prosecution elicited from Ware that he had been previously convicted of five other armed robberies.

Ware fails to assert on appeal that, at the time of trial, more than ten years had elapsed since the date of his release from

12

confinement for his former convictions, as required by Rule 609.[5]

Ware also does not assert that the evidence of his prior convictions was improper under the substance of Rule 609 or any other rule of evidence.  See, e.g., Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts . . . may . . . be admissible [to show] proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.").  Moreover, he does not argue that the prosecution's cross-examination on his prior convictions prejudicially affected his trial.  As a result, we reject Ware's challenge on this point.[6]

_____

[5]Although Ware contends that the prosecution's cross-examination of him was improper because his prior convictions were more than ten years old, he does not assert that more than ten years have passed since his dates of release from confinement for these convictions.  As noted, Rule 609 requires us to look to the later of these two dates.

[6]Ware also contends that the trial court erred in allowing the prosecution to cross-examine him on the substance of his prior convictions, because he had already stipulated to a prior felony conviction.  Being raised for the first time on appeal, this issue is subject to plain error review only.  In Old Chief v. United States, the Supreme Court held that, when a defendant stipulates to his felony status at the time of his alleged possession of a firearm (in violation of 18 U.S.C. § 922(g)(1)), the Government is precluded from offering other evidence to prove the prior conviction.  See 519 U.S. 172, 191 (1997); see also United States v. Jackson, 124 F.3d 607, 616 (4th Cir. 1997).  Although Ware's stipulation that he was a felon precluded evidence of his predicate felony conviction, see United States v. Grimmond, 137 F.3d 823, 831 (4th Cir. 1998) (citing Old Chief, 519 U.S. at 189), the prosecution did not, in its case-in-chief, offer any additional evidence on that conviction.  When the prosecution elicited testimony regarding Ware's other convictions, Ware had already testified to part of his criminal history.  See, e.g., United States v. Mohr, 318 F.3d 613, 626 (4th Cir. 2003) (finding no error where court allowed testimony of improper motive on re-direct

13

III.

Pursuant to the foregoing, the judgment of the district court is affirmed.

AFFIRMED

---

because door opened on cross-examination).  In these circumstances, we also reject this contention.